PRESENT:  All the Justices

STEVEN LAWRENCE

OPINION BY

v.          Record No. 091119          JUSTICE S. BERNARD GOODWYN

February 25, 2010

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Randy I. Bellows, Judge

In this appeal we consider whether the circuit court erred in admitting expert testimony regarding the details of unadjudicated allegations of sexual misconduct the expert learned from police reports and whether expert opinion testimony dependent upon the truth of those unadjudicated allegations is admissible into evidence.

In 1990, Steven L. Lawrence (Lawrence) was convicted of, among other things, rape and sodomy and sentenced to a total of forty-five years imprisonment, with five years suspended. Prior to his scheduled release from incarceration, the Commonwealth filed a petition pursuant to the Sexually Violent Predator Act (SVPA), Code §§ 37.2-900 et seq., requesting Lawrence's civil commitment as a sexually violent predator.

After a jury trial in the Circuit Court of Fairfax County, Lawrence was found to be a sexually violent predator and committed to the Department of Mental Health, Mental Retardation and Substance Abuse Services for involuntary secure

inpatient treatment.  Lawrence appeals, arguing that the circuit court erred in allowing certain evidence to be presented to the jury.

## Facts

At the outset of Lawrence's civil commitment trial, the Commonwealth sought to introduce into evidence a sexually violent predator forensic psychological evaluation prepared by Dr. Ilona Gravers, a licensed clinical psychologist.  Lawrence objected to the introduction of the document, arguing that the evaluation report was hearsay because it included information from police reports concerning various unadjudicated allegations of sexual misconduct and references to a previous polygraph test.  After argument, the circuit court sustained the objection and the evaluation report was not admitted into evidence.

During its direct examination of Dr. Gravers, the Commonwealth sought to elicit testimony from her concerning the details of the allegations of unadjudicated sexual misconduct contained in the police reports.  Lawrence objected, arguing that such testimony would be hearsay and that any probative value was outweighed by undue prejudice.  The Commonwealth argued that Code § 8.01-401.1 authorized an expert witness to rely upon hearsay and to give her reasons for her opinions. The Commonwealth also argued that Dr. Gravers' testimony

regarding the content of the police reports was not hearsay because it was not offered for the truth of the allegations but to show the basis for Dr. Gravers' opinion.

Agreeing with the Commonwealth's position, the circuit court overruled Lawrence's objections. The circuit court did, however, read an instruction to the jury, which stated, "Testimony regarding allegations of behavior contained in police reports for which the Respondent has not been convicted was not offered or is not offered to prove that the behavior actually occurred, but only as the basis for the expert's opinion."

Dr. Gravers testified regarding the details of a police report in which it was claimed that Lawrence was acting as a "pimp" for a female prostitute and would cut and burn her when she did not make enough money for him. Dr. Gravers also discussed the allegations detailed in a police report that described an incident where Lawrence allegedly threatened a woman with a shotgun when she refused to perform sexual acts with him and his girlfriend. Neither of these recounted incidents resulted in formal charges. Dr. Gravers also testified concerning a police report that resulted in a charge for rape in 1975, but no conviction. In that incident, while 18 years old, Lawrence allegedly forcefully disrobed a 15 year-old girl and attempted to rape or raped her. Dr. Gravers did

3

not talk to any of the participants in the alleged incidents reported to the police. Also, the alleged victims and witnesses were in some cases not identified and none were available to testify or to be cross-examined.

Dr. Gravers diagnosed Lawrence with a paraphilia, a mental abnormality and a "personality disorder not otherwise specified with antisocial traits," based partially on the unadjudicated allegations of sexual misconduct. Dr. Gravers stated that the reported incidents led her to conclude that Lawrence had "intimacy deficits," which are considered "a dynamic or a changeable risk factor for future sexual offending." On cross-examination, Dr. Gravers stated that she relied on the information from the police reports in reaching the conclusion that there was a pattern of sexual aggression and intimacy deficits. Furthermore, Dr. Gravers stated that she viewed Lawrence's denials of the unadjudicated allegations as an indication of his "minimizing" and part of his pattern of "distorted thinking."

In addition to objecting to Dr. Gravers being allowed to testify concerning the details of the incidents reported to the police, Lawrence also objected to Dr. Gravers' opinion testimony. Lawrence objected to its admissibility claiming that Dr. Gravers' opinions were based upon unreliable facts gleaned from the police reports concerning unadjudicated

4

allegations of sexual misconduct by Lawrence.  The circuit court overruled Lawrence's objection.

The Commonwealth also called Dr. Ronald M. Boggio to testify.  Dr. Boggio concluded that Lawrence had a history of sexual offending based on the various charges, police reports and convictions and opined that Lawrence had a high risk of committing sexual offenses in the future.  Dr. Boggio did not discuss the unadjudicated allegations in detail.  Dr. Boggio diagnosed Lawrence with paraphilia not otherwise specified and antisocial traits, but did not find that Lawrence had an antisocial personality disorder.

## Analysis

Lawrence claims that the circuit court erred in admitting Dr. Gravers' testimony regarding the details of unadjudicated allegations of sexual misconduct by Lawrence, because the testimony was hearsay and unduly prejudicial.  Lawrence argues that this Court's decision in Commonwealth v. Wynn, 277 Va. 92, 671 S.E.2d 137 (2009), should inform, if not control, the resolution of the issue.

The Commonwealth argues that this case is distinguishable from Wynn because, in this case, the circuit court decided that the information concerning the details in the police reports was not hearsay, and the circuit court issued a cautionary instruction to the jury.  Further, the Commonwealth argues that

5

even if the challenged testimony was hearsay, the admission of the evidence was harmless error "considering the mountain of information that was admitted from other sources and was unchallenged."

This Court reviews evidentiary rulings under an abuse of discretion standard. Coe v. Commonwealth, 231 Va. 83, 87, 340 S.E.2d 820, 823 (1986). "However, '[a] trial court has no discretion to admit clearly inadmissible evidence because admissibility of evidence depends not upon the discretion of the court but upon sound legal principles.'" Wynn, 277 Va. at 97, 671 S.E.2d at 139 (quoting Norfolk & Western Ry. Co. v. Puryear, 250 Va. 559, 563, 463 S.E.2d 442, 444 (1995)) (internal quotation marks omitted).

This Court defines hearsay as an out of court statement offered to prove the truth of the matter asserted. Robinson v. Commonwealth, 258 Va. 3, 6, 516 S.E.2d 475, 476 (1999). It includes testimony given by a witness who relates what others have told him or what he has read. Id. Hearsay evidence is inadmissible unless it falls within one of the recognized exceptions to the hearsay rule. Id. The party attempting to introduce a hearsay statement has the burden of proving that the statement falls within one or more of the exceptions. Id. at 6, 516 S.E.2d at 476-77.

This Court, in Wynn, stated:

> Code § 37.2-908(C) provides that an expert witness
> testifying at an SVPA trial may state the "basis for
> his opinions." Similarly, pursuant to Code § 8.01-
> 401.1, an expert witness may rely upon "facts,
> circumstances or data made known to . . . such
> witness" in formulating an opinion; those "facts,
> circumstances or data . . . , if of a type normally
> relied upon by others in the particular field of
> expertise in forming opinions and drawing inferences,
> need not be admissible in evidence." Neither of these
> statutes, however, allows for the introduction of
> otherwise inadmissible hearsay evidence during the
> direct examination of an expert witness merely because
> the expert relied on the hearsay information in
> formulating an opinion.

277 Va. at 100, 671 S.E.2d at 141.

In Wynn, this Court specifically rejected the argument

that the details of unadjudicated allegations of sexual

misconduct offered by an expert on direct examination,

supposedly to show the factual basis of an expert's opinion,

are not hearsay. Id. at 99, 671 S.E.2d at 140. Even though

Code § 37.2-908(C) provides that an expert witness may state

the "basis for his opinions," that does not extend to testimony

about the details of hearsay allegations of sexual misconduct.

Wynn, 277 Va. at 100-02, 671 S.E.2d at 141-42. We reasoned

that even though an expert may rely upon hearsay allegations of

sexual misconduct (if the information is of the type routinely

used by experts in the given field of expertise) in formulating

an opinion, "a litigant, nevertheless, should not be required

to contend with [the truth of details of] such hearsay

information because the trier of fact cannot observe the

7

demeanor of the speaker and the statements cannot be tested by cross-examination."  Id. at 100, 671 S.E.2d at 141.

The Commonwealth asserts that this case is distinguishable from Wynn because the circuit court read a limiting instruction to the jury.  We disagree.  Dr. Gravers' testimony on direct examination improperly included numerous details about unproven past allegations of sexual misconduct against Lawrence.  The alleged victims and witnesses were in some cases not identified and none were available for cross-examination.  Lawrence, similar to the petitioner in Wynn, was faced with hearsay evidence about allegations of sexual misconduct.  In this context, the improper admission of such evidence — which cannot effectively be restricted to proper use or purposes in the minds of the jury — cannot be remedied by the giving of a limiting instruction.  See Coffey v. Commonwealth, 188 Va. 629, 636, 51 S.E.2d 215, 218 (1949).  We hold that the circuit court erred in allowing Dr. Gravers to testify on direct examination about the details of unadjudicated allegations of sexual misconduct she learned about from reading police reports.

The Commonwealth argues that the admission of the evidence, even if erroneous, was harmless error.  Harmless error requires a showing that the parties "had a fair trial on the merits and substantial justice has been reached."  Code § 8.01-678.  This Court has held that nonconstitutional error

8

is harmless if the reviewing court can be sure that the error did not influence the jury and only had a slight effect. Clay v. Commonwealth, 262 Va. 253, 260, 546 S.E.2d 728, 731-32 (2001) (quoting Kotteakos v. United States, 328 U.S. 750, 764-65 (1946)).

Although Dr. Boggio testified for the Commonwealth and opined that Lawrence had a high risk of future sexual offenses, it is worth noting that, by statute, expert testimony is not dispositive in an SVPA determination proceeding. Code § 37.2-906(C). The jury had to decide, after hearing all the expert and lay testimony, whether the Commonwealth had proven by clear and convincing evidence that Lawrence was a sexually violent predator. Code § 37.2-908(C). The details about the alleged sexual misconduct, which were no doubt prejudicial to Lawrence, would not have been introduced to the jury but for Dr. Gravers' impermissible testimony. Given the nature and extent of that detailed, improper testimony concerning alleged sexual misconduct, and the fact that, in rendering her opinion, Dr. Gravers indicated to the jury that she assumed those allegations to be true, it cannot be found with assurance that the evidence concerning the details of unadjudicated allegations of sexual misconduct did not influence the jury or that it had only slight effect. See Code § 8.01-678; Clay, 262 Va. at 260, 546 S.E.2d at 731-32. Therefore, we hold that the

9

error in this case regarding the admission into evidence of hearsay evidence concerning allegations of sexual misconduct by Lawrence was not harmless.

Lawrence also contends that Dr. Gravers' opinion testimony had an inadequate factual foundation because it was based upon the truth of hearsay allegations in police reports concerning unadjudicated conduct. Thus, Lawrence argues that the circuit court should have stricken Dr. Gravers' expert opinion testimony because it was speculative and unreliable as a matter of law. See Commonwealth v. Garrett, 276 Va. 590, 606, 667 S.E.2d 739, 748 (2008).

The Commonwealth argues that Dr. Gravers' opinion testimony was admissible because Dr. Gravers did not speculate beyond the information she had or make any factual errors in terms of using the information. Further, the Commonwealth contends that because experts may rely on such underlying information, Dr. Gravers' expert opinion had an adequate factual foundation. The Commonwealth also asserts that the circuit court did not err in failing to strike Dr. Gravers' expert opinion testimony because although Dr. Gravers relied upon the allegations in the police reports, the information in the police reports was not the sole basis for her opinions and she had other additional information she relied on in reaching her conclusions.

10

In Garrett, this Court stated that an expert opinion in a sexually violent predator trial must have an adequate factual foundation. 276 Va. at 606, 667 S.E.2d at 748. An expert may not "express an opinion that is speculative and unreliable as a matter of law." Id. "Expert testimony founded upon assumptions that have no basis in fact is not merely subject to refutation by cross-examination or by counter-experts; it is inadmissible." Vasquez v. Mabini, 269 Va. 155, 160, 606 S.E.2d 809, 811 (2005).

Here, the evidence indicates that Dr. Gravers, in forming her expert opinions, considered as true unsubstantiated allegations contained in police reports she read. Dr. Gravers stated that the unadjudicated allegations of sexual misconduct contained in the police reports led her to the conclusion that Lawrence had a pattern of sexual aggression and intimacy deficits. Dr. Gravers also stated that while her diagnosis of paraphilia, not otherwise specified, was primarily based on Lawrence's two convictions, her conclusion that Lawrence had an antisocial personality disorder, not otherwise specified, depended on the allegations in the police reports and Lawrence's pattern of antisocial behavior, as shown through those allegations.

Based on this Court's holding in Garrett, we hold that Dr. Gravers' expert testimony did not have an adequate factual

11

foundation to the extent it was dependent upon assuming the truth of the hearsay allegations concerning Lawrence's past sexual misconduct. Dr. Gravers' opinions, which were dependent upon the truth of hearsay allegations unsupported by evidence properly presented at trial, were speculative and unreliable as a matter of law and should not have been admitted into evidence.

## Conclusion

For these reasons, we will reverse the judgment of the circuit court and remand the case for further proceedings consistent with the views expressed in this opinion if the Commonwealth be so advised. To the extent that Dr. Gravers is able to render opinions without assuming the truth of hearsay allegations that are unsupported by evidence presented at trial, the views expressed here will not serve to bar that expert testimony. See Garrett, 276 Va. at 608, 667 S.E.2d at 749.

Reversed and remanded.